United States Court of Appeals

For the Eighth Circuit

_____

No. 22-2927
_____

Parents Defending Education,

*Plaintiff - Appellant*,

v.

Linn Mar Community School District; Shannon Bisgard, in his official capacity as Superintendent; Brittania Morey, In their official capacity as a member of the Linn Mar Community School District School Board; Clark Weaver, In their official capacity as a member of the Linn Mar Community School District School Board; Barry L. Buchholz, In their official capacity as a member of the Linn Mar Community School District School Board; Sondra Nelson, In their official capacity as a member of the Linn Mar Community School District School Board; Matt Rollinger, In their official capacity as a member of the Linn Mar Community School District School Board; Melissa Walker, In their official capacity as a member of the Linn Mar Community School District School Board; Rachel Wall, In their official capacity as a member of the Linn Mar Community School District School Board,

*Defendants - Appellees*.

------------------------------

Foundation for Moral Law; Atlantic Legal Foundation; Jewish Coalition for Religious Liberty; Coalition for Jewish Values; American Hindu Coalition; Islam and Religious Freedom Action Team; Institute for Faith and Family; Parental Rights Iowa; The Justice Foundation; Wisconsin Family Action; Illinois Family Institute; Minnesota Family Council; Delaware Family Policy Council; Hawaii Family Forum; The Family Foundation; Ethics and Religious Liberty Commission of the Southern Baptist Convention; Baptist Convention of Iowa; Concerned Women For America; The Ethics & Public Policy Center; The National Legal Foundation; Pacific Justice Institute; Liberty Justice Center; Moms for Liberty;

Institute for Free Speech; State of Montana; State of Alabama; State of Alaska; State of Arizona; State of Arkansas; State of Georgia; State of Idaho; State of Kentucky; State of Louisiana; State of Mississippi; State of Nebraska; State of Oklahoma; State of South Carolina; State of Tennessee; State of Texas; State of Utah; State of Virginia; State of West Virginia; Advancing American Freedom; American Cornerstone Institute; American Principles Project; American Values; Centennial Institute at Colorado Christian University; Citizens United; Citizens United Foundation; Committee for Justice; Common Sense Club; Dr. James Dobson Family Institute; Eagle Forum; Faith and Freedom Coalition; Family Research Council; Focus on the Family; National Center for Public Policy Research; Project 21 Black Leadership Network; Sarah Perry; Tea Party Patriots Action; The FAMiLY LEADER; Young America's Foundation,

*Amici on Behalf of Appellant(s)*,

One Iowa; Iowa Safe Schools; Lambda Legal Defense and Education Fund; Professors of Psychology & Human Development; Interfaith Alliance of Iowa,

*Amici on Behalf of Appellee(s)*.

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: February 15, 2023
Filed: September 29, 2023

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Parents Defending Education, an association of parents, brought this action to challenge a policy adopted by the Linn Mar Community School District in Iowa. The district court denied a motion for preliminary injunction, and Parents Defending appeals. We dismiss the appeal in part as moot, and reverse on one claim.

# I.

The disputed policy is entitled "Administrative Regulations Regarding Transgender and Students Nonconforming to Gender Role Stereotypes." The policy was adopted in April 2022 as Board Policy 504.13-R. The policy sets forth regulations for the District that "address the needs of transgender students, gender-expansive students, nonbinary, gender nonconforming students, and students questioning their gender to ensure a safe, affirming, and healthy school environment where every student can learn effectively."

One section of the policy is entitled "Establishment of Gender Supports." A "gender support" is an accommodation for "transgender students regarding names/pronouns, restroom and locker facilities, overnight accommodations on school trips, and participation in activities." The school may create a "Gender Support Plan" at the request of a student. A Gender Support Plan is a "document that may be used to create a shared understanding about the ways in which a student's gender identity will be accounted for and supported at school."

When a student requests a Gender Support Plan, "the school will hold a meeting with the student within 10 school days of being notified about the request." Under the policy, "[t]he student should agree with who is a part of the meeting, including whether their parent/guardian will participate." The section provides that "[a]ny student in seventh grade or older will have priority of their support plan over their parent/guardian." In instances where there is not a Gender Support Plan, but a student wants to receive support at school, "school administrators and/or school counselors shall work with the student to identify and coordinate support."

A second section is entitled "Confidentiality." The policy states that "[c]onversations between students and school counselors are protected, confidential conversations under applicable counselor/student laws." The District also "shall not disclose information that may reveal a student's transgender status to others

Appellate Case: 22-2927     Page: 3     Date Filed: 09/29/2023 Entry ID: 5321000

including but not limited to other students, parents, and school staff unless legally required to do so . . . or unless the student has authorized such disclosure."

A third section is headed "Names and Pronouns." The policy provides that a student has "the right to be addressed by a name and pronoun that corresponds to their gender identity." The fourth and final paragraph under this heading states that "[a]n intentional and/or persistent refusal by staff or students to respect a student's gender identity is a violation of school board policies," including "anti-bullying" and "anti-harassment" policies. The policy defines "gender identity" as "[a] person's deeply-held sense or psychological knowledge of their own gender." A student who violates the policy "shall be disciplined by appropriate measures, which may include suspension and expulsion."

Parents Defending Education is a nationwide organization whose stated mission is to prevent the politicization of K-12 education. The parents who seek to participate in this case are anonymous; the pleadings identify them by a letter of the alphabet. Parents A-G are members of the organization and have children who are or were enrolled in school in the District.

Parents A and B have children with developmental disabilities. They claim that these disabilities make it more likely that their children will assert gender identities different from the sex that they were assigned at birth. Parents A and B allegedly fear that the District will create a Gender Support Plan for their children without parental knowledge or consent in accordance with the policy. Parent A has since withdrawn her child from enrollment in the District to avoid this situation.

Parent C allegedly fears that her daughter will be given a Gender Support Plan without the parent's knowledge. Parent C bases this assumption on her daughter's particular life experiences, conversations she has had with her daughter, and her daughter's association with the LGBT community.

Parents D-G and their children believe that biological sex is immutable, and that people cannot "transition" from one sex to another. They claim that because the policy requires a student to "respect" another student's gender identity, their children face discipline if they do not affirm beliefs with which they disagree or if they express views that are deemed "disrespectful" by an administrator. Parents D and G allege that their children remain silent in school environments or refrain from using sex-specific pronouns to avoid violating the policy. Parents E and F, who are married, fear that their child will experience mental and psychological harm if forced to choose between expressing fundamental beliefs and conforming to the policy.

In August 2022, Parents Defending sued the District and several officials seeking declaratory and injunctive relief. The complaint alleged that the policy, on its face, violates the First and Fourteenth Amendments. Specifically, the complaint asserted that the policy violates an alleged substantive due process right of Parents A-C to direct the care, custody, and control of their children, and injures Parents D-G by violating their children's rights to freedom of speech.

Parents Defending moved for a preliminary injunction of the policy. The district court determined that Parents Defending failed to establish Article III standing because the organization did not show injury, causation, or redressability on its claims. The court further reasoned that even if the organization could establish standing, the claims would likely fail on the merits. After determining that other relevant factors also weighed against a preliminary injunction, the district court denied the motion.

## II.

Parents Defending first challenges the denial of its motion for an injunction based on a substantive due process claim that the policy violates a right of parents to direct the care, custody, and control of their children. They complain that the District's policy prevents a school from notifying parents whether their child has

-5-

Appellate Case: 22-2927    Page: 5    Date Filed: 09/29/2023 Entry ID: 5321000

been given a gender support plan or assumed a transgender status. We conclude that intervening legislation enacted in Iowa provides Parents Defending with all of the relief requested on this claim. The appeal regarding this claim is therefore moot.

After this appeal was submitted, the Iowa legislature passed Senate File 496, and the governor signed it into law. The law became effective on July 1, 2023. *See* Iowa Code § 279.78 (2023). This new statute prohibits a school district from knowingly giving "false or misleading information to the parent or guardian of a student regarding the student's gender identity or intention to transition to a gender that is different than the sex listed on the student's official birth certificate." *Id*. § 279.78(2). If a student requests a gender accommodation that is "intended to affirm the student's gender identity from a licensed practitioner employed by the school district," then the "licensed practitioner shall report the student's request to an administrator employed by the school district, and the administrator shall report the student's request to the student's parent or guardian." *Id*. § 279.78(3). A licensed practitioner is "an administrator, teacher, or other licensed professional . . . who provides educational assistance to students." *Id*. § 272.1.

The new Iowa statute provides Parents A-C all of their requested relief. The District may not knowingly give false information to a parent about a student's gender identity, and must notify a parent of a student's request for a gender accommodation from a licensed practitioner. An appeal is moot where changed circumstances have provided the requested relief. *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013). "A statutory change that discontinues a challenged practice usually makes an appeal moot." *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023).

In a post-enactment submission, Parents Defending argues that the new statute does not render their substantive due process claim moot. They suggest that although the statute forbids a school to give parents "false or misleading information" about a student's gender identity, the challenged policy allows the District to withhold information entirely. The statute, however, also requires a

school administrator to notify a parent when a child requests a gender accommodation from a licensed practitioner employed by the school district. Iowa Code § 279.78(3). The statute thus forbids a school district to withhold the information entirely.

Parents Defending also suggests that the claim is not moot because the law requires only "licensed practitioners," not other school employees, to report a student's request for gender accommodation. School administrators, teachers, and counselors, however, are "licensed practitioners" under Iowa law. *See* Iowa Code § 272.1; Iowa Admin. Code R. 281-12.3(11), 282-27.1(1). The challenged policy on gender support plans applies to a request by a student to meet with "school administrators and/or school counselors" to receive support. Even if a student requests a gender accommodation from another school employee, and there is no gender support plan, the challenged policy dictates that "school administrators and/or school counselors shall work with the student to identify and coordinate support." The Iowa statute thus requires a report to a parent when a student requests gender support under the challenged policy.

The enactment of Senate File 496 provides Parents Defending with its requested relief on its substantive due process claim. We therefore dismiss this portion of the appeal as moot, and we need not address whether the organization has standing to seek relief on this claim. *See Ness v. City of Bloomington*, 11 F.4th 914, 920 (8th Cir. 2021). *Cf. Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 631 (4th Cir. 2023).

III.

A.

Parents Defending next challenges the district court's ruling on its claim under the First Amendment. Parents Defending maintains that Parents D-G are injured

-7-

because the policy violates their children's rights to freedom of speech. Parents have standing to sue when the practices and policies of a school threaten the rights and interests of their minor children. *See, e.g.*, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718-19 (2007); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963).

A plaintiff claiming an abridgment of the right to free speech has standing to seek pre-enforcement review of a policy "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (internal quotation omitted).

Parents Defending argues that the students' speech has been chilled by the prospect of the policy's enforcement. Under the policy, "[a]n intentional and/or persistent refusal by staff or students to respect a student's gender identity is a violation of school board policies." A student who fails to comply with the provision "shall be disciplined by appropriate measures, which may include suspension and expulsion." Parents Defending claims that the children of Parents D-G wish to express certain opinions about biological sex and gender identity at school, but fear that their speech may be considered "disrespectful" of another student's gender identity, and thus met with discipline.

We conclude that at least Parent G has alleged an injury in fact sufficient to confer Article III standing. Parent G asserts that her son wants to "state his belief that biological sex is immutable," "disagree[] with another student's assertion about whether they are male or female," "stat[e] that a biological male who identifies as female should not be allowed to compete in women's sports," and "express[] discomfort about sharing bathrooms with teachers or students of the opposite biological sex." Because of the policy, however, Parent G states that her son remains

-8-

silent in school "when gender identity topics arise" to avoid violating the policy. This student's proposed activity "concerns political speech" and is "arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 161-62.

The District argues that the suggested activity is not "affected with a constitutional interest," because harassment or bullying on the basis of gender is not protected speech within the school environment. Although it is true that schools have an interest in regulating speech that involves an "invasion of the rights of others," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 513 (1969), it is "certainly not enough that the speech is merely offensive to some listener." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 217 (3d Cir. 2001). A school district cannot avoid the strictures of the First Amendment simply by defining certain speech as "bullying" or "harassment." Parent G alleges that her child wishes to engage in an "open exchange of ideas" and to express beliefs that others might find disagreeable or offensive. The proposed speech is "arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 161-62 (internal quotation omitted).

Second, the conduct in which Parent G's child intends to engage is arguably proscribed by the policy. The policy broadly prohibits a refusal to "respect a student's gender identity." The policy does not define "respect," and the expression of opinions like those held by Parent G's child arguably would violate the policy. The District contends that the policy concerns only the use of a student's preferred name or pronouns, and does not restrict the expression of "general opinions" about gender identity. The text of the policy, however, does not limit the prohibition to a refusal to use a student's preferred name or pronoun. We thus conclude that the proposed activity is arguably proscribed by the policy.

-9-

Third, there is a credible threat of enforcement. When a course of action is within the plain text of a policy, a "credible threat" of enforcement exists. *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019). The text of the policy here provides that a student who violates the policy "shall be disciplined by appropriate measures, which may include suspension and expulsion." The policy was enacted only recently in 2022, and there is thus no established practice of non-enforcement that could assuage concerns about the imposition of discipline. *See St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006).

Finally, the alleged injury is fairly traceable to potential enforcement of the policy by the District, and a favorable decision will likely redress the injury. *See Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019). The District argues that the injury is not redressable because Iowa law and the policy prohibit similar conduct. Iowa law prohibits "harassment" and "bullying" in schools, *see* Iowa Code § 280.28, and prevents schools from establishing practices that discriminate on the basis of "gender identity," *see* Iowa Code § 216.9(1). But the policy's requirements allegedly go beyond existing law to encompass a refusal to "respect a student's gender identity." An order granting relief would redress an injury caused independently by the policy.

For these reasons, Parent G has standing to bring a claim challenging the policy based on the First Amendment. Therefore, Parents Defending has standing as an association to pursue the claim on behalf of a member. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986).

B.

On the merits of the order denying a preliminary injunction, we consider the threat of irreparable harm to the movant, the likelihood that the movant will succeed on the merits, the balance between the harm to the movant and injury that an

-10-

injunction would inflict on other parties, and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). When a plaintiff demonstrates a likelihood of success on the merits of a First Amendment challenge, the other preliminary injunction factors are "generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (internal quotation omitted). We review the district court's order for abuse of discretion, with factual findings examined for clear error, and legal conclusions considered *de novo*. *Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750, 754 (8th Cir. 2018).

The challenged policy provides that an "intentional and/or persistent refusal . . . to respect a student's gender identity" is a violation of school board policies and subject to discipline. Parents Defending argues that the policy's requirement that a child "respect a student's gender identity" violates the First Amendment on several grounds.

We conclude that Parents Defending is likely to succeed on its claim that this portion of the policy is void for vagueness. A governmental policy is unconstitutionally vague if it fails to "provide adequate notice of the proscribed conduct" and lends "itself to arbitrary enforcement." *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009).

School disciplinary rules need not be as detailed as a criminal code that imposes criminal sanctions. *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308-09 (8th Cir. 1997). But when a school policy reaches speech protected by the First Amendment, the vagueness doctrine "demands a greater degree of specificity than in other contexts." *Id*. (internal quotation omitted). As such, "while a lesser standard of scrutiny is appropriate because of the public school setting, a proportionately greater level of scrutiny is required because the regulation reaches the exercise of free speech." *Id*.

-11-

The District's policy does not provide adequate notice of what conduct is prohibited, because it fails to define the term "respect." As the district court acknowledged, "respect" has various meanings. Because the policy does not define or limit the term, it could cover any speech about gender identity that a school administrator deems "disrespectful" of another student's gender identity. A student thus cannot know whether he is violating the policy when he expresses discomfort about sharing a bathroom with someone who is transgender, argues that biological sex is immutable during a debate in social studies class, or expresses an opinion about the participation of transgender students on single-sex athletic teams.

The District asserts that "respect" requires only the use of a student's preferred name and pronouns, and does not prohibit "general opinions" about gender identity. The district court concluded that the policy "appears" to be so limited, because the paragraph regarding refusal to "respect a student's gender identity" is set forth at the end of a section headed "Names and Pronouns."

We are not convinced that a student may rest assured that the policy is as narrow as the District asserts in litigation. Even assuming for the sake of analysis that the District could dictate a student's use of names and pronouns, the plain meaning of the policy is not so limited. The policy threatens discipline for a refusal to "respect a student's gender identity," not for a refusal to respect a student's preferred name or pronoun. The term "gender identity" is defined as "[a] person's deeply-held sense or psychological knowledge of their own gender"—a capacious concept that likely goes well beyond a name and a pronoun. That a defined term is used under a section heading does not change the meaning of the defined term.

The lack of clarity also makes the policy susceptible to arbitrary enforcement. The undefined term "respect" leaves the policy open to unpredictable interpretations, and creates a substantial risk that school administrators may arbitrarily enforce the policy. Without meaningful guidance, District officials are left to determine on an "ad hoc and subjective basis" what speech is "disrespectful" and subject to

-12-

discipline, and what speech is acceptable. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

For these reasons, we conclude that Parents Defending is likely to succeed on the merits of its First Amendment challenge to a portion of the policy, and that the other preliminary injunction factors are satisfied as to that claim. *See Minn. Citizens Concerned for Life*, 692 F.3d at 870. The portion of the appeal concerning an alleged violation of substantive due process rights is dismissed as moot. The district court's orders of September 12 and September 20, 2022, are vacated. Due to the vagueness of the policy, the case is remanded with directions to grant a preliminary injunction against enforcement of the portion of the policy prohibiting an intentional or persistent refusal "to respect a student's gender identity."

KELLY, Circuit Judge, concurring.

I agree that schools are limited in their ability to regulate speech that is "merely offensive to some listener." See Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 217 (3d Cir. 2001) (Alito, J.); see also Wildman ex rel. Wildman v. Marshalltown Sch. Dist., 249 F.3d 768, 771 (8th Cir. 2001) (noting it is within "school officials' authority to prohibit the public expression of vulgar and offensive comments and to teach civility and sensitivity in the expression of opinions." (citing Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 683 (1986))). However, I write separately because the gravamen of this case is not the regulation of speech that is merely disagreeable or offensive to some listener. What is before the court are Linn-Mar Community School District's efforts to abide by the requirements imposed on it by federal and state law.

Title IX bars sex-based discrimination in public schools.[1] See Religious Sisters of Mercy v. Becerra, 55 F.4th 583, 588 (8th Cir. 2022) (citing Portz v. St. Cloud St. Univ., 16 F.4th 577, 580 (8th Cir. 2021)). Title IX "unquestionably" places on school boards "the duty not to permit teacher-student harassment in [their] schools, and recipients [of federal funds] violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct." Davis ex. rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 643 (1999) (cleaned up) (quoting Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75 (1992)). Deliberate indifference to known acts of harassment can also "amount[] to an intentional violation of Title IX . . . when the harasser is a student rather than a teacher." Id.

As part of their bar on sex-based discrimination, federal anti-discrimination statutes prohibit discrimination on the basis of gender identity. See Horton v. Midwest Geriatric Mgmt., LLC, 963 F.3d 844, 847 (8th Cir. 2020) ("[T]he [Supreme] Court held that it 'defies' Title VII for 'an employer to discriminate against employees for being homosexual or transgender,' because to do so, it 'must intentionally discriminate against individual men and women in part because of sex.'" (quoting Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1743, 1754 (2020)). Courts have found that this includes Title IX. See Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 616 (4th Cir. 2020), as amended (Aug. 28, 2020) ("Although Bostock interprets Title VII . . . it guides our evaluation of claims under Title IX"). Federal agencies similarly interpret Title IX to bar discrimination on the basis of gender identity. See Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27984-02 (Dep't of Health & Hum. Servs. May 25, 2021) (to be codified

---

[1] As six other circuits have held, sexual harassment in schools can also violate the Constitution's Equal Protection Clause, as can an administrator's ratification of such conduct. Feminist Majority Found. v. Hurley, 911 F.3d 674, 701–02 (4th Cir. 2018) (citing T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010), and listing cases reaching this conclusion from the Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits).

-14-

Appellate Case: 22-2927     Page: 14     Date Filed: 09/29/2023 Entry ID: 5321000

at 45 C.F.R. pts. 86, 92) ("[T]he Civil Rights Division of the U.S. Department of Justice . . . conclud[ed] that the Supreme Court's reasoning in Bostock applies to Title IX."); Memorandum on Application of Bostock v. Clayton County to Title IX of the Education Amendments of 1972 from Principal Deputy Assistant Att'y Gen., Pamela S. Karlan, U.S. Dep't of Just., Civ. Rts. Div., to Fed. Agency Civ. Rts. Dirs. and Gen. Counsels (Mar. 26, 2021), https://www.justice.gov/crt/page/file/1383026/download.

The Iowa Civil Rights Act is even more explicit in prohibiting discrimination on the basis of gender identity. Iowa Code § 216.9 (2008) ("It is an unfair or discriminatory practice for any educational institution to discriminate on the basis of . . . sex, sexual orientation, [or] gender identity, . . . in any program or activity.").

Relevant here, Iowa law additionally bars school employees, volunteers, and students in Iowa schools from engaging in harassing or bullying behavior. Iowa Code § 280.28 (2007). This law is based on the General Assembly's finding, codified within Iowa's anti-bullying statute, "that a safe and civil school environment is necessary for students to learn and achieve at high academic levels. Harassing and bullying behavior can seriously disrupt the ability of school employees to maintain a safe and civil environment, and the ability of students to learn and succeed." Id. § 280.28(1). The statute defines "harassment" and "bullying" "to mean any electronic, written, verbal, or physical act or conduct toward a student which is based on any actual or perceived trait or characteristic of the student and which creates an objectively hostile school environment that meets one or more of [several] conditions." Id. § 280.28(2)(*b*).[2] The statute lists "gender identity" as a "trait or characteristic of the student." Id. § 280.28(2)(*c*).

---

[2]These conditions are:
(1) Places the student in reasonable fear of harm to the student's person or property.
(2) Has a substantially detrimental effect on the student's physical or mental health.

-15-

In sum, Linn-Mar Community School District has a duty, under federal and state law, to protect students from harassment and discrimination on the basis of sex. Under federal law this duty extends to protecting students from harassment or discrimination on the basis of gender identity. Iowa law explicitly imposes a duty to protect students from discrimination on the basis of gender identity. The District also has a duty, under Iowa law, to protect students from bullying, and this duty extends to protecting students from harassment and bullying on the basis of gender identity.

One step the District has taken to meet its responsibilities under both federal and state law is to adopt Board Policies 103.1 and 103.1-R, which are anti-bullying and anti-harassment policies and regulations. Board Policy 103.1 was adopted by the District in 2007, and it bans "repeated or potentially repeated acts" or "ongoing conduct toward an individual based on any trait or characteristic of the individual which creates an objectively hostile school environment that," for example, "[h]as a substantial detrimental effect on the individual's physical or mental health." See Board Policy 103.1. This Policy explicitly includes "gender identity" as a "trait or characteristic," and thus explicitly bans bullying and harassment on the basis of gender identity. Id.

The District was also responding to legislative mandates when it promulgated Board Policies 504.13 and 504.13-R. The Superintendent of the District explained that "[i]n order to meet the District's obligations under federal and state law . . . the District has provided . . . support and accommodations relating to gender identity." And Board Policies 504.13 and 504.13-R clarify and refine how to protect students from bullying, harassment, and discrimination on the basis of their gender identity. For example, in the portion now challenged on First Amendment grounds, Board

---

(3) Has the effect of substantially interfering with a student's academic performance.
(4) Has the effect of substantially interfering with the student's ability to participate in or benefit from the services, activities, or privileges provided by a school.

Id. § 280.28(2)(b)(1)–(4).

-16-

Policy 504.13-R recognizes the right of "every student" "to be addressed by a name and pronoun that corresponds to their gender identity." And, against the backdrop of the Iowa Civil Rights Act and Title IX, it reiterates that no student shall be denied equal access to education or school activities on the basis of their gender identity. It also lays out steps that schools and administrators must follow to secure equal rights for all District students, including the prohibition against discrimination by way of repeated or intentional misgendering.

Nevertheless, I concur in the outcome of this case. The constitutional problem with Board Policy 504.13-R is that it proscribes acts or conduct that intentionally or persistently do not "*respect* a student's gender identity,"[3] and fails to provide meaningful guidance as to what falls within the scope of the word "respect." In doing so, Board Policy 504.13-R is likely too vague about what speech it proscribes, making it potentially susceptible to arbitrary enforcement.

But it is important to note that the problem with Board Policy 504.13-R is not that it seeks to regulate opinions about issues related to gender identity or "merely offensive" speech. It does not. Rather, Board Policy 504.13-R seeks to "ensure a safe, affirming, and healthy school environment" where every student, including those of all gender identities, "can learn effectively." The District may have used language that is insufficiently tailored to its effort to achieve this goal. But the goal itself is not only appropriately inclusive and well within the scope of the District's educational mission. See, e.g., Doe by & through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 528 (3d Cir. 2018) cert. denied sub nom. Doe v. Boyertown Area Sch.

---

[3]That said, the policy could not cover *any* speech about gender identity that a school administrator deems "disrespectful" of a student's gender identity. For example, a student would know they are not automatically violating the policy when expressing discomfort about sharing a bathroom with someone who is transgender because the policy expressly invites such objections. Board Policy 504.13-R ("any student who is uncomfortable using a shared facility regardless of the reason shall, *upon the student's and/or a parent/guardian request*, be provided with a safe and non-stigmatizing alternative." (emphasis added)).

-17-

Dist., 139 S. Ct. 2636 (2019) ("When transgender students face discrimination in schools, the risk to their wellbeing cannot be overstated—indeed, it can be life threatening."); Iowa Code § 280.28(2)(b)(2) (banning harassment and bullying that creates an objectively hostile school environment that has a substantially detrimental effect on the student's physical or mental health). It is mandated by law.

_____